# Illinois Official Reports

## Appellate Court

---

### *People v. Shipp*, 2020 IL App (2d) 190027

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. PHILLIP M. SHIPP, Defendant-Appellee. |
| District & No. | Second District No. 2-19-0027 |
| Filed | June 4, 2020 |
| Rehearing denied | July 6, 2020 |
| Decision Under Review | Appeal from the Circuit Court of Stephenson County, No. 09-CF-38; the Hon. James M. Hauser, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Carl H. Larson, State's Attorney, of Freeport (Patrick Delfino, Edward R. Psenicka, and Richard S. London, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| | James E. Chadd, Patricia Mysza, and Joshua M. Bernstein, of State Appellate Defender's Office, of Chicago, for appellee. |
| Panel | PRESIDING JUSTICE BIRKETT delivered the judgment of the court, with opinion. Justices Hudson and Bridges concurred in the judgment and opinion. |

**OPINION**

¶ 1  The State appeals the postconviction court's third-stage grant of defendant, Phillip M. Shipp's, petition filed under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2012)) in connection with his convictions of armed violence (720 ILCS 5/33A-2(a) (West 2008)), unlawful possession of a controlled substance with intent to deliver (720 ILCS 570/401(c)(2) (West 2008)), and unlawful possession of a firearm by a felon (720 ILCS 5/24-1.1(a) (West 2008)). We previously reversed the court's summary dismissal of the petition and remanded the cause, concluding that defendant stated an arguable constitutional claim that his appellate counsel was ineffective for failing to challenge the denial of a motion to suppress. *People v. Shipp*, 2015 IL App (2d) 130587.

¶ 2  The State contends that the postconviction court erred in failing to consider, as an alternate argument for denying the ineffectiveness claim, that defendant was allegedly walking illegally in the street and that, therefore, appellate counsel acted reasonably by not challenging the suppression denial. The State failed to raise that issue on appeal from the postconviction court's summary dismissal. Thus, defendant argues that the State forfeited the issue or that it is the law of the case. We affirm.

<h3 style="text-align:center">I. BACKGROUND</h3>

¶ 4  Defendant was charged after police responded to a report of a fight that possibly involved guns. Defendant was found near the scene with a loaded pistol, cocaine, and cannabis. Defendant moved to suppress the physical evidence, and for the most part, the evidence was undisputed.

¶ 5  The evidence introduced at the hearing on the motion to suppress showed that, at around 5 a.m. on January 31, 2009, in response to a 911 call about a fight involving weapons and possibly guns, police officers, including Jeff Zalaznik, were dispatched to the intersection of Iroquois Street and Miami Avenue in Freeport. No information was provided describing the people involved in the fight. None of the officers witnessed a fight. No information was provided about the reliability of the 911 call.

¶ 6  Zalaznik arrived at the area less than a minute after the dispatch order. He saw two individuals, defendant and Denise Dickens, walking south in the street in the 500 block of Miami Avenue. He stated that they were on the east side of the street and that it was not very wide. Zalaznik observed nothing unusual or illegal about their activity. The record indicated that they were less than a block from the intersection of Miami Avenue and Iroquois Street. Another officer was north, in the 600 block of Miami Avenue, talking to an individual.

¶ 7  Defendant introduced into evidence a video from a police squad car that showed large piles of snow along the sides of the streets in the general area, with some driveways and intersections blocked by plowed snow. The video showed that many sidewalks had been cleared of snow but that others had not been cleared and were blocked by snow. The squad car eventually pulled up behind where Zalaznik was speaking with defendant at the side of the road. The video, albeit rather dark and grainy, shows that, if there was a sidewalk there at all, the snow on either side of the street was either not removed or not removed well. At a minimum, there were large mounds of snow that likely blocked the entrances to sidewalks. After the video was allowed into evidence, the State asked Zalaznik whether he could see if the sidewalks were clear for

pedestrians. He said "Yes, they were," and "[a]ctually, I believe all the sidewalks were fairly clear of snow and ice. They were available to be walked on."

¶ 8       Defendant and Dickens did not appear to be agitated, sweating, or out of breath, and they were not doing anything unusual. Their clothing was not disheveled, and defendant did not have any injuries or marks consistent with a fight. Without leaving his squad car, Zalaznik asked if they had been involved in, or knew of, any fights. Defendant and Dickens said "no" and continued walking.

¶ 9       Zalaznik did not activate his lights, but he got out of his squad car and asked them to stop. Zalaznik approached defendant and Dickens, said that he was investigating a 911 call, and asked for identification. Dickens asked why he needed her identification, and defendant said that he was just visiting his grandfather. They attempted to walk away, but Zalaznik told them to stop. Trial counsel asked Zalaznik whether, during this initial encounter, he told Dickens and defendant if they could leave. Zalaznik answered that he informed them that they were not free to leave until the investigation was finished. Zalaznik stated that he stopped defendant because, given the time of day, the nature of the call, the area, and vehicles leaving the area, he suspected that defendant might have been involved in the fight.

¶ 10      According to Zalaznik, while he was questioning defendant and Dickens, a van pulled up and two people, whom Zalaznik identified as David and Diann Adams, stepped out and yelled to Zalaznik that they were the people who had called 911. They said that the people he was looking for were north on Miami Avenue. Zalaznik told them to get back in the van. Zalaznik stated that he was sure that the woman was Diann, and not her sister, Mary Adams. Officer Sanders then arrived and told the Adams couple to remain in their van. Zalaznik said that he knew the Adams couple from prior police calls and indicated that David had a history of mental issues and violence toward police. Zalaznik said that, at the time, he took what the woman said as the truth but also felt that she was trying to divert his attention and protect defendant or was not telling the truth. Later, there was evidence that Zalaznik had misidentified Diann and that the woman in the van was Mary. Mary testified and did not claim to be the person who called 911. She testified that she initially learned of the altercation from Dickens and that she told Zalaznik that defendant was not involved.

¶ 11      Zalaznik redirected his attention to defendant and Dickens, who repeatedly attempted to walk away. Each time they tried to disengage, Zalaznik told them to stop, and they complied. Zalaznik observed that defendant had his hands in his jacket pockets, and Zalaznik ordered him to remove them. Defendant complied. Zalaznik did not recall defendant wearing gloves and agreed that, given the time of year, it was probably cold outside. He said that police officers ask people to remove their hands from their pockets in the interests of officer safety and because, if people put their hands in their pockets multiple times, it can indicate that they have a weapon.

¶ 12      Zalaznik again asked defendant and Dickens to provide identification. Defendant stated that he did not have identification on his person but that it was in his truck, which was parked about 20 feet away. Defendant began walking toward the truck, but Zalaznik told him to stop and said that verbal identification would be acceptable. Defendant and Dickens provided their names.

¶ 13      Zalaznik radioed the names to dispatch to check for any outstanding warrants and found out later that neither defendant nor Dickens had one. Zalaznik recognized defendant's name, as he had been the alleged victim of a shooting about a month before the incident. The shooting

incident made Zalaznik think that defendant might be seeking revenge. Officer Michael Thompson testified, however, that he thought perhaps defendant had shot himself.

¶ 14     Officers Shippert and Thompson arrived, and Shippert saw defendant put his hands in his jacket pockets and he told defendant to remove them. Defendant complied. Zalaznik asked defendant if the officers could conduct a pat down for weapons. Defendant became agitated, said that he had not done anything wrong, and refused. Defendant then put his hands in his pockets, and Zalaznik and Shippert attempted to grab his arms. Defendant fled, he slipped on some ice and fell, and the officers caught up to him and handcuffed him. A search uncovered a loaded pistol in defendant's pants pocket. They also found cocaine, cannabis, and $560 cash. Other officers testified to details that were generally consistent with those provided by Zalaznik.

¶ 15     Dickens testified that, on January 31, 2009, she had been outside a party where there were confrontations. She saw defendant standing on Miami Avenue and walked over to him. Defendant told her that he was on his way to his grandfather's house, which was about halfway down the block. Defendant's grandfather was also Dickens's uncle, and she decided to go there as well. She said that Zalaznik stopped them and kept asking questions. He did not tell them that they could or could not leave. She denied that defendant kept trying to walk away.

¶ 16     Each party filed written arguments regarding the motion to suppress. The State primarily argued that the evidence should be admitted because defendant was near the scene of a reported crime and various facts suggested that defendant possibly had been involved. The State also characterized defendant as "walking in the middle of the street" and argued that the police had probable cause to stop defendant because he was violating state law and a local ordinance by doing so. 625 ILCS 5/11-1007 (West 2012); Freeport Municipal Code § 446.04(b) (amended Apr. 2, 1984). Defendant responded that there was insufficient evidence of such a violation. In particular, defendant took issue with the State's version of the facts, noting that the State could point to no testimony that defendant was in the middle of the street and that Zalaznik testified that defendant was on the side of the narrow street.

¶ 17     The trial court denied the motion to suppress, finding that it was unnecessary to determine whether the police officers acted properly when they initially questioned defendant, stopped him, demanded identification, or sought to pat him down. Instead, the court found that when he fled defendant resisted or obstructed the performance of a police officer, making the subsequent search permissible. The court did not specifically discuss violations of state law or local ordinances regarding defendant's presence in the street. However, in its written findings, the court stated that neither defendant nor Dickens appeared to be committing a crime when they were walking in the area.

¶ 18     On March 11, 2010, the parties agreed to a stipulated bench trial, and the State agreed to dismiss an unrelated charge. The stipulation included a recommended sentence and stated that defendant wished to preserve the suppression issue for appellate review. The parties agreed that the stipulation was tantamount to a guilty plea. Defendant was convicted, no posttrial motions were filed, and defendant appealed.

¶ 19     On direct appeal, counsel argued in part that defendant's stipulated bench trial was equivalent to a guilty plea, requiring compliance with Illinois Supreme Court Rule 604(d) (eff. July 1, 2017) and Rule 605(c) (eff. Oct. 1, 2001). There was no appeal of the denial of the motion to suppress. On October 30, 2012, we rejected the argument that the stipulated bench trial was equivalent to a guilty plea and granted relief on an unrelated issue. *People v. Shipp*,

2012 IL App (2d) 110265-U. On February 15, 2013, defendant filed his postconviction petition, alleging that appellate counsel was ineffective for failing to challenge the denial of the motion to suppress.

¶ 20 On May 13, 2013, the postconviction court summarily dismissed the petition as frivolous and patently without merit. Without providing any specific analysis, the court concluded that the failure to raise the suppression issue on appeal was not objectively unreasonable and that defendant failed to show that, had counsel raised the matter, the conviction or sentence would have been reversed. Defendant appealed. *Shipp*, 2015 IL App (2d) 130587, ¶ 18. On appeal, the State made no argument that the police had probable cause to stop defendant, and could then search him incident to arrest, based on his allegedly illegal act of walking in the street. Instead, the State argued that defendant's proximity to the area of the reported fight, his refusal to cooperate, and the time of day made the stop appropriate. See *id.* ¶ 27.

¶ 21 We reversed, finding that defendant's counsel on direct appeal was arguably ineffective for failing to challenge the denial of defendant's pretrial motion to suppress. *Id.* ¶ 64. We held in part that defendant's act of walking in a residential area without behaving suspiciously or being tied to a crime was insufficient to support the stop. We further held that a protective search was improper because the only basis to believe that defendant was armed was a subjective hunch or speculation. *Id.* ¶ 46. In accordance with defendant's prayer for relief, we remanded the petition for second-stage postconviction proceedings.

¶ 22 On remand, the postconviction court expressed confusion as to the proper course of action, such as whether to hold additional proceedings or grant the petition outright. Ultimately, the court held second- and third-stage proceedings. During those proceedings, the State argued, for the first time since the suppression hearing, that defendant's act of walking in the street was a valid alternate basis for the stop. Defendant argued that the State had forfeited the issue. Although the proceedings advanced to the third stage, the parties did not present additional evidence about the condition of the sidewalks. At one point, postconviction counsel stated that, because the legality of the search had already been adjudicated, he was not going to get into why the alleged ordinance or state law violation would not support the stop. When the postconviction court advanced the matter to the third stage, it told the parties "[w]e are not going to be rehashing all of the circumstances of the stop" because it had "already been dealt with long ago," adding "unless you folks disagree with me." At the third-stage hearing, defendant's counsel on direct appeal testified that he did not raise the suppression issue because he misapprehended the law. Additional facts concerning defendant's act of walking in the street were not presented, nor were legal or factual arguments made as to whether an accumulation of snow and ice made use of the sidewalks impracticable.

¶ 23 The postconviction court granted the petition in a written order. Although the trial court, in denying suppression, stated that defendant violated the law by walking in the street, it gave no factual or legal analysis concerning the state of the sidewalks, and it ultimately did not rule on that matter. In contrast, on remand from our reversal of the summary dismissal of the petition, the postconviction court interpreted our opinion as stating that, had the suppression issue been raised on direct appeal, we would have reversed the denial of the motion to suppress. Thus, the postconviction court concluded our holding mandated granting the petition. The State appeals.

¶ 24                                    II. ANALYSIS

¶ 25        The State argues that the postconviction court erred in granting the petition. The State asserts that, because defendant could have been arrested for walking in the street and searched incident to arrest, counsel acted reasonably on direct appeal by not challenging the denial of the motion to suppress. Defendant argues that the record is insufficient to show that he violated the law by walking in the street, the postconviction court properly followed this court's mandate, and the issue is the law of case or is forfeited by the State.

¶ 26        The Act provides a remedy for defendants who have suffered a substantial violation of constitutional rights at trial. *People v. Pendleton*, 223 Ill. 2d 458, 471 (2006). The Act sets forth three stages of proceedings. *Id.* at 471-72.

¶ 27        At the first stage, the trial court independently reviews the defendant's postconviction petition and determines whether "the petition is frivolous or is patently without merit." 725 ILCS 5/122-2.1(a)(2) (West 2012). If it finds that the petition is frivolous or patently without merit, the court must dismiss the petition. *Id.* If the court does not dismiss the petition, it proceeds to the second stage, where, if necessary, the court appoints counsel for the defendant. *Pendleton*, 223 Ill. 2d at 472. Defense counsel may amend the defendant's petition to ensure that his or her contentions are adequately presented. *Id.* Also at the second stage, the State may file a motion to dismiss the defendant's petition or file an answer to it. *Id.* If the State does not file a motion to dismiss or the court denies such a motion, the petition advances to the third stage, wherein the court holds a hearing at which evidence may be presented. *Id.* at 472-73.

¶ 28        At issue in this appeal is whether the postconviction court erred in granting defendant's amended petition after a third-stage evidentiary hearing. "At a third-stage evidentiary hearing, the defendant bears the burden of making a substantial showing of a constitutional violation." *People v. English*, 406 Ill. App. 3d 943, 951-52 (2010). We will not reverse a judgment based on fact-finding and credibility determinations at this stage unless that judgment is manifestly erroneous. *People v. English*, 2013 IL 112890, ¶ 23. " 'Manifestly erroneous means arbitrary, unreasonable and not based on the evidence.' " *People v. Ceja*, 204 Ill. 2d 332, 347 (2003) (quoting *People v. Wells*, 182 Ill. 2d 471, 481 (1998)). However, we are not bound by the postconviction court's reasoning for its judgment and can affirm the judgment on any ground in the record regardless of whether the court relied on it. *People v. Durgan*, 281 Ill. App. 3d 863, 867 (1996).


¶ 29                        A. Mandate on Remand, Forfeiture, and Law of the Case

¶ 30        The State first argues that the postconviction court erred by failing to conduct an independent analysis of whether the stop was valid based on defendant's alleged violation of the law by walking in the street. Defendant argues that the postconviction court correctly followed this court's mandate and that the matter is forfeited or is the law of the case.

¶ 31        As we stated in our previous disposition, reviewing the first-stage summary dismissal, "[a] claim of ineffective assistance of counsel is assessed under the standards articulated in *Strickland v. Washington*, 466 U.S. 668, (1984)." *Shipp*, 2015 IL App (2d) 130587, ¶ 24. "Under the Act, the trial court may not summarily dismiss a petition alleging ineffective assistance of counsel if (1) counsel's performance arguably fell below an objective standard of reasonableness and (2) the defendant was arguably prejudiced as a result." *Id.* "The failure to establish either prong of *Strickland* is fatal to the claim." *Id.* "With respect to appellate counsel's failure to raise an issue, a defendant meets the prejudice prong by showing a

reasonable probability that, had counsel raised the issue, the appeal would have succeeded." *Id.* "Although the postconviction petition must identify the bases upon which the defendant's constitutional rights were violated, the threshold for first-stage survival is low." *Id.* ¶ 23. "The defendant must set forth only the gist of a constitutional claim, which means that the petition contains enough facts to make out an arguable constitutional claim." *Id.*

¶ 32     The law-of-the-case doctrine prevents a party from " 'taking two bites out of the same appellate apple.' " See *People v. Tenner*, 206 Ill. 2d 381, 395 (2002) (quoting *People v. Partee*, 125 Ill. 2d 24, 37 (1988)). "Specifically, the law of the case doctrine bars relitigation of an issue already decided in the same case." *Id.* But the doctrine does not apply in a subsequent stage of litigation involving different issues. *Preferred Personnel Services, Inc. v. Meltzer, Purtill & Stelle, LLC*, 387 Ill. App. 3d 933, 947 (2009).

¶ 33     Here, when we reversed the postconviction court's first-stage summary dismissal and remanded, we were acting in accordance with the standard that defendant stated the gist of a constitutional claim that his counsel was arguably ineffective for failing to raise the suppression issue on direct appeal. We did so in the context of first-stage review, where the parties did not discuss the matter of defendant's act of walking in the street. At that stage of the proceedings, making independent factual determinations, especially those not raised on appeal or made by the trial court, would have been inappropriate. Thus, when we concluded that defendant was arguably prejudiced by counsel's failure to raise the suppression issue on direct appeal, we in no way were saying that defendant was in fact prejudiced. We simply determined that the petition had satisfied the "arguably ineffective" standard, which applied to defendant's claim of ineffective assistance raised at the first stage of the postconviction proceedings. See *People v. DuPree*, 397 Ill. App. 3d 719, 737 (2010).

¶ 34     Although reaching our determination required applying the facts to the law and, to be sure, left the State with a high bar to overcome, the first-stage standard does not apply to a claim of ineffective assistance raised at a third-stage evidentiary hearing. See *People v. Hodges*, 234 Ill. 2d 1, 6-17 (2009). As a result, we reversed the summary dismissal and remanded for further proceedings, as the natural progression would be to advance the proceedings to the second stage, and then to the third stage, if warranted. This was also exactly what defendant included in his brief as the prayer for relief. Thus, while the postconviction court ultimately held a third-stage hearing, our mandate did not require granting the petition without further consideration of the underlying issues. For the same reason, the matter was not the law of the case.

¶ 35     Defendant alternatively argues that the State forfeited the matter because, by failing to raise it on appeal, the State acquiesced in any conclusion that defendant's act of walking in the street was not an alternate basis for denying the motion to suppress. Defendant also contends that the State forfeited the matter under *People v. Williams*, 138 Ill. 2d 377 (1990), because the State failed to file a motion to reconsider after the first appeal. *Williams*, however, is distinguishable.

¶ 36     In *Williams*, the defendant moved to quash his arrest for lack of probable cause and to suppress his confession made after the illegal arrest. The trial court found that the defendant had been illegally arrested and it quashed his arrest. *Id.* at 382. The trial court also suppressed the defendant's confession without holding a hearing. The State did not appeal. See *id.* at 382-84. More than a year later, the State moved for a hearing on the admissibility of the confession. The motion was granted because it had not specifically been ruled on before. *Id.* at 384-85. After the hearing, the trial court found that the defendant's confession was sufficiently attenuated from his illegal arrest to be admitted against him at trial. *Id.* at 386. The defendant

was convicted, and he argued on appeal that the trial court erred in holding a hearing on the issue when the State had not appealed from the original suppression order or sought reconsideration of that order. *Id.* at 386-87. Our supreme court held that the State was indeed barred from litigating the issue because the attenuation question was part and parcel of the suppression question and could not be severed and raised more than a year later. The court found that the State should have sought either timely reconsideration of the order or an appeal from it and that its failure to do so precluded it from raising the issue more than one year later. See *id.* at 396-97.

¶ 37 In *Williams*, the State forfeited its argument by failing to appeal an adverse ruling. That is much different from what happened here, where the State initially made the argument at the suppression hearing and was the prevailing party. The State omitted its argument during defendant's appeal from the summary dismissal, which was in the context of postconviction proceedings that contemplated additional fact finding at later stages. Our supreme court has held that, when the State is the prevailing party on a motion to suppress and does not raise an alternate argument for suppression on direct appeal, it would be unfair to hold that the omission results in forfeiture or waiver of its right to a remand to address the matter. *People v. Janis*, 139 Ill. 2d 300, 319 (1990). Instead, the State should have an opportunity to present evidence that might contradict the defendant's claim. *Id.*; see generally *People v. Lucy*, 204 Ill. App. 3d 1019, 1033 (1990) (distinguishing *Williams*). This view is in line with the premise that waiver is a limitation on the parties and not the court. *People v. Demitro*, 406 Ill. App. 3d 954, 957 (2010). It is further in line with our supreme court's recognition that the " 'responsibility of a reviewing court for a just result and for the maintenance of a sound and uniform body of precedent may sometimes override the considerations of waiver that stem from the adversarial nature of our system.' " *People v. Wilson*, 155 Ill. 2d 374, 379 (1993) (quoting *American Federation of State, County & Municipal Employees, Council 31 v. County of Cook*, 145 Ill. 2d 475, 480 (1991)).

¶ 38 Whether defendant's act of walking in the street was an alternate basis for denying the motion to suppress was a question involving factual determinations that had not yet been made by the trial court. The viability of defendant's ineffectiveness claim turned on these factual determinations. Such arguments are more appropriate in later stages of postconviction proceedings. See generally *People v. Tate*, 2012 IL 112214, ¶¶ 19, 22. We note that no facts, besides those in the record, were actually presented on remand. Thus, in hindsight, and as a matter of judicial economy, it would have been preferable for the State to have raised the matter in the appeal from the summary dismissal. Nevertheless, given the procedural posture of the case, we conclude that the State has not forfeited the issue.

¶ 39 B. Defendant's Act of Walking in the Street

¶ 40 Having found that (1) the postconviction court erred in determining that we mandated granting the petition and (2) the State was not precluded from raising the issue on remand, we next turn to the issue of the effect of the trial court's failure to make factual findings during the suppression hearing. The State did not present at the third-stage hearing any additional facts concerning the issue nor did it present legal arguments as to when the use of sidewalks could be deemed practicable. Instead it simply asserts now that defendant violated the law by walking in the street. But that issue is not as clear as the State assumes it to be.

¶ 41    Section 11-1007 of the Illinois Vehicle Code (Code) provides in part that "[w]here a sidewalk is provided and its use is practicable, it shall be unlawful for any pedestrian to walk along and upon an adjacent roadway." 625 ILCS 5/11-1007(a) (West 2008). Further, "[w]here a sidewalk is not available, any pedestrian walking along and upon a highway shall walk only on a shoulder, as far as practicable from the edge of the roadway." *Id.* § 11-1007(b). "Where neither a sidewalk nor a shoulder is available, any pedestrian walking along and upon a highway shall walk as near as practicable to an outside edge of a roadway, and, if on a two-way roadway, shall walk only on the left side of the roadway." *Id.* § 11-1007(c). The Freeport Municipal Code provides the same. Freeport Municipal Code § 446.04 (amended Apr. 2, 1984). The parties do not dispute that the street was a "[h]ighway" under the Code. See 625 ILCS 5/1-126 (West 2008) (defining "[h]ighway"). The key takeaway from these provisions for purposes of this appeal are that, to violate the law, defendant had to do more than merely walk in the street.

¶ 42    At the trial level, in a motion to quash or suppress, the initial burden of proof is on the defendant. *People v. Bobiek*, 271 Ill. App. 3d 239, 241 (1995). Once the defendant submits evidence that shows that, at the time of the arrest, he or she was doing nothing unusual (*i.e.*, his conduct was not indicative of the commission of a crime) and he or she was arrested without a warrant, the defendant has made a *prima facie* case that the police lacked probable cause. The burden then shifts to the State to show that the warrantless arrest was based on probable cause; in other words, the State must demonstrate that the police had reasonable grounds to believe that the defendant had committed a crime. *People v. Garcia*, 94 Ill. App. 3d 940, 942-43 (1981). Our review of a trial court's ruling on a defendant's motion to suppress evidence or statements "involves mixed questions of fact and law," and we will give "great deference to the trial court's factual findings," reversing them "only if they are against the manifest weight of the evidence." *People v. Redman*, 386 Ill. App. 3d 409, 417 (2008). Nevertheless, we review "*de novo* the trial court's legal determination of whether suppression is warranted under those facts." *Id.*

> "When a [postconviction] petition is advanced to a third-stage, evidentiary hearing, where fact-finding and credibility determinations are involved, we will not reverse a circuit court's decision unless it is manifestly erroneous. [Citation.] If no such determinations are necessary at the third stage, *i.e.*, no new evidence is presented and the issues presented are pure questions of law, we will apply a *de novo* standard of review, unless the judge presiding over postconviction proceedings has some 'special expertise or familiarity' with the trial or sentencing of the defendant and that 'familiarity' has some bearing upon disposition of the postconviction petition." *Pendleton*, 223 Ill. 2d at 473.

See *People v. Caballero*, 206 Ill. 2d 65, 87-88 (2002).

¶ 43    Here, the postconviction court heard no new evidence regarding the condition of the sidewalks. The court told the parties that it would not reopen evidence concerning the initial motion to suppress, unless the parties disagreed, and the State did not seek to offer additional evidence on the matter. While the judge presided over the motion to suppress, the facts concerning defendant's act of walking in the street are straightforward, thus there is no familiarity or special expertise that has bearing on disposition of the issue. As a result, we review the issue *de novo* based on the evidence in the record. See generally *English*, 2013 IL 112890, ¶ 24.

¶ 44    The State relies heavily on the postconviction court's statement on remand, made without analysis, that defendant violated the law, and it argues that we should either defer to that factual finding or remand for a new third-stage hearing because of it. But defendant's claim is ineffective assistance of appellate counsel for not raising the suppression issue in the first appeal. Thus, we look to the record as it existed at that time, and we note that the trial court found that defendant did not appear to be committing a crime. Had the matter been raised in the first appeal, we would have deferred to that finding, and we agree with that finding now.

¶ 45    To violate the law, defendant had to do more than merely walk in the street. Since defendant was not on the sidewalk, a violation required proof that using the sidewalk was practicable or that, if not, defendant was not walking at the edge of the street. Although the State has asserted that defendant was walking in the middle of the street, that assertion is not supported by the record. Instead, the evidence showed that defendant was walking south on the east side of a narrow street. That placed defendant on the left side of the street, as the statute required with a two-way roadway.

¶ 46    The State has not presented any argument as to what constitutes "practicable" use of a sidewalk when there is evidence of an accumulation of snow and ice. Indeed, at no stage in the litigation has the State provided legal arguments as to whether an accumulation of snow or ice on a sidewalk could render its use impracticable. This court is " 'entitled to have issues clearly defined with pertinent authority cited and cohesive arguments presented [(Ill. S. Ct. R. 341(h)(7) (eff. May 25, 2018))], and it is not a repository into which an appellant may foist the burden of argument and research.' " *Stenstrom Petroleum Services Group, Inc. v. Mesch*, 375 Ill. App. 3d 1077, 1098-99 (2007) (quoting *Obert v. Saville*, 253 Ill. App. 3d 677, 682 (1993)). By failing to develop an argument or cite authority, the State has forfeited any argument that, as a matter of law, use of a sidewalk is practicable despite any accumulation of snow and ice. See *Velocity Investments, LLC v. Alston*, 397 Ill. App. 3d 296, 297 (2010); Ill. S. Ct. R. 341(h)(7) (eff. May 25, 2018); see also *People v. Wendt*, 183 Ill. App. 3d 389, 404 (1989).

¶ 47    Regarding the factual issue presented by the accumulation of snow and ice, there was minimal evidence concerning the condition of the sidewalks. While Zalaznik testified that the sidewalks were "fairly" clear of snow and could be walked on, the video of the scene refuted his testimony. Instead, the video showed significant amounts of plowed snow blocking the entry to sidewalks. It was not clear where defendant was stopped, whether there were sidewalks on both sides of the street, or whether the sidewalk that was visible ran the full length of the block. At a minimum, there were mounds of snow likely blocking access. At oral argument, counsel for the State admitted that he had not watched the video. Based on our viewing of the video, we find that it was reasonable to discern that defendant was walking in the street because use of the sidewalks was impracticable. Thus, there was a *prima facie* case that the police lacked probable cause. The burden then shifted to the State to show probable cause in that there were grounds to believe that defendant had committed a crime by walking in the street. The State failed to do so. Then, at the third-stage hearing, in the absence of facts showing that use of the sidewalks was practicable, defendant made a substantial showing that his counsel was ineffective for failing to raise the suppression issue on direct appeal. Nothing showed that counsel did not raise the matter because he believed that there was evidence that use of the sidewalks was practicable. As a result, the State's argument on this issue fails.

¶ 48                                   C. Additional Factual Dispute

¶ 49      Finally, the State takes issue with our statement in the initial postconviction appeal that the people who reported the crime told Zalaznik that the individuals he was looking for had gone north, when it was later shown that those people had not been the 911 callers. The State further contends that those people were not credible because Zalaznik stated that he believed that they were trying to divert his attention. The State argues that this should change how we determined the initial appeal. But Zalaznik's testimony was equivocal; he stated both that, in his mind at the time, he was taking what the woman said as the truth and that he also felt that she was trying to divert his attention and protect defendant or not telling the truth. Zalaznik, although stating that he knew the people, also misidentified the woman who spoke to him.

¶ 50      As we noted in the initial postconviction appeal, the reasonableness of the officer's belief is measured by an objective standard that the defendant is presently armed and dangerous. *Shipp*, 2015 IL App (2d) 130587, ¶¶ 43, 46. We also relied in part on the decision in *People v. Linley*, 388 Ill. App. 3d 747, 753 (2009), holding that, without reliable information that shots had been fired in the vicinity, there were no particular facts that would lead the officers to believe that the defendant was armed and dangerous. Here, the officers stated only one basis for seeking to frisk defendant: a dispatch call, with no report of shots fired and no information about the reliability of the call or the people involved. Instead, the people purporting to have made the call told the officers that the individuals they were looking for had gone north. That Zalaznik had some subjective doubts about those people and that they later were found to have not made the 911 call does not change our analysis that, at the time of the stop, the officers still had only a subjective hunch or belief that defendant was armed. As we stated in the first postconviction appeal, that was insufficient. *Shipp*, 2015 IL App (2d) 130587, ¶¶ 41-46. Moreover, we also held that the initial stop was improper, which made the attempted frisk improper as well, regardless of who made the 911 call or Zalaznik's impression of them. See 725 ILCS 5/108-1.01 (West 2008); *People v. Davis*, 352 Ill. App. 3d 576, 580 (2004) (for a frisk to be reasonable, the stop must be proper). Thus, our previous holding stands.

¶ 51                                          III. CONCLUSION

¶ 52      Although the postconviction court erred in determining that we mandated that it grant the petition, the record shows that defendant made a substantial showing that his counsel was ineffective on direct appeal for failing to challenge the denial of the motion to suppress. As we are not bound by the postconviction court's reasoning and can affirm the judgment on any ground in the record, we do so. Accordingly, the judgment of the circuit court of Stephenson county is affirmed.

¶ 53      Affirmed.