NOTICE
This Order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2021 IL App (4th) 190735-U

NOS. 4-19-0735, 4-19-0736 cons.

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
April 30, 2021
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Vermilion County |
| HENRY TAYLOR, | ) | Nos. 13CF544 |
| Defendant-Appellant. | ) | 15CF35 |
| | ) | |
| | ) | Honorable |
| | ) | Thomas M. O'Shaughnessy, |
| | ) | Judge Presiding. |

JUSTICE CAVANAGH delivered the judgment of the court.
Presiding Justice Knecht and Justice Steigmann concurred in the judgment.

**ORDER**

¶ 1    *Held*:  (1) Because postplea counsel's certificate pursuant to Illinois Supreme Court 604(d) (eff. July 1, 2017) is unrebutted by the records on appeal, the certificate will be credited.

(2) By denying defendant's second amended motion to withdraw his guilty pleas, the circuit court did not abuse its discretion.

¶ 2    Defendant entered negotiated guilty pleas to two counts of possessing, with the intent to distribute, between 2000 and 5000 grams of cannabis (720 ILCS 550/4(f) (West 2012); 720 ILCS 550/4(f) (West 2014)). One count was in Vermilion County case No. 13-CF-544 (corresponding to our case No. 4-19-0736), and the other count was in Vermilion County case No. 15-CF-35 (corresponding to our case No. 4-19-0735). For those offenses, the Vermilion County circuit court sentenced defendant to consecutive prison terms of six years and eight years. Before

being sentenced, defendant moved to withdraw his guilty pleas in the two cases. The court denied his motion in its successive versions.

¶ 3        Defendant appeals from the denial of his second amended motion to withdraw his guilty pleas in the two cases (henceforth, the "second amended motion"). We have consolidated his two appeals. In both appeals, his contentions are twofold.

¶ 4        First, defendant contends that his postplea counsel failed to fulfill the requirements of Illinois Supreme Court Rule 604(d) (eff. July 1, 2017). But postplea counsel certified that she had done everything that the rule required. In our *de novo* review of the records, we find nothing that affirmatively refutes her certificate. Therefore, her Rule 604(d) certificate prevails.

¶ 5        Second, defendant contends that, instead of ruling on his second amended motion, Judge O'Shaughnessy should have recused himself on the ground of a conflict of interest or that, at least, he should have assigned another judge to adjudicate defendant's allegation of a conflict of interest. But defendant, through his defense counsel, never moved that Judge O'Shaughnessy recuse himself or that he assign another judge to adjudicate his alleged conflict of interest. And, besides, Judge O'Shaughnessy's prior representation of a witness in, apparently, a different matter was not disqualifying.

¶ 6        Therefore, we affirm the judgments in Vermilion County case Nos. 15-CF-35 and 13-CF-544.

¶ 7                                I. BACKGROUND

¶ 8        In the early morning of January 22, 2015, police officers went to defendant's residence, in Danville, Illinois, in response to a report that gunmen had fired into his residence in an attempt to rob him. After some investigation, the police obtained a warrant to search defendant's

residence. In the search, they found $72,014, 3409 grams of cannabis, cellular phones, a digital scale, and a small amount of a substance that tested positive for the presence of cocaine.

¶ 9 Because of those discoveries, the police arrested defendant, and the State charged him with, among other offenses, possessing, with the intent to distribute, between 2000 and 5000 grams of cannabis. See 720 ILCS 550/4(f) (West 2014). The criminal case was docketed as case No. 15-CF-35.

¶ 10 On January 22, 2015, according to the second amended motion, the State filed a submission for preliminary review in a civil forfeiture case, Vermilion County case No. 15-MR-31, asking the circuit court to order that the $72,014 seized from the house be held under the court's jurisdiction until forfeiture proceedings were completed. See 725 ILCS 150/3.5(a) (West 2014) (providing that, within 14 days after seizure of the property, the State "shall seek a preliminary determination from the circuit court as to whether there is probable cause that the property may be subject to forfeiture").

¶ 11 On January 23, 2015, in case No. 15-CF-35, the circuit court set bond at $2 million, requiring defendant to post 10% of that amount. See 725 ILCS 5/110-7(a) (West 2014). That day, according to the second amended motion, defendant "had family and friends report to the [Vermilion County] Public Safety Building with the $200,000.00 that would be required to secure his release in [case No.] [15]-CF-35. Mr. Wes[ley] Burris brought $184,850.00 of the $200,000.00 to the Public Safety Building, [and this currency] was seized by Vermilion County Metropolitan Enforcement Group Agents." The $184,850 "was never actually posted but [was] seized as drug[ ] assets," to quote what the prosecutor said in a hearing of February 2, 2015.

¶ 12 On January 26, 2015, according to the second amended motion, the State filed a submission for preliminary review in another civil forfeiture case, Vermilion County case No.

15-MR-35, asking the circuit court to order that the $184,850 be held under the court's jurisdiction until forfeiture proceedings were completed. See 725 ILCS 150/3.5(a) (West 2014).

¶ 13 At the time the State filed the charges in case No. 15-CF-35, defendant already had several criminal cases pending against him, namely, Vermilion County case Nos. 11-CF-465, 12-CF-509, 13-CF-544, and 14-CF-343. In case No. 14-CF-343, defendant's mother, Winnie Taylor, posted $50,000 to obtain his pretrial release.

¶ 14 In the hearing of February 2, 2015, the parties informed the circuit court that they had reached an agreement on certain matters. In case No. 14-CF-343, bond would be revoked (that is, defendant would be held without bond), and the $50,000 would remain in the court's custody and would not be released without a source-of-bond hearing. See 725 ILCS 5/110-5(b-5) (West 2014). In case No. 15-MR-35, the court would reinstate a probable-cause ruling on the source of the $184,850 that Burris had brought in for a bond, and defendant would remain in custody in that case, without bond. Ten thousand dollars of the $184,850 would be returned to defendant's son. All civil forfeiture matters would be consolidated with the felony matters.

¶ 15 On February 17, 2015, in case Nos. 14-CF-343 and 15-CF-35, the parties entered into an agreed-upon order that (1) the State had shown reasonable cause for a source-of-bond hearing in those two cases and (2) before defendant was released in those two cases, a source-of-bond hearing would be held, and "any bond currently posted in [case No. 14-CF-343 was to] be held by the [c]ourt until a source[-]of[-]bond hearing [was] requested by the [d]efendant."

¶ 16 On April 8, 2016, in case No. 14-CF-343, a jury found defendant guilty of possessing, with the intent to distribute, over 5000 grams of cannabis. The jury also found defendant guilty of possessing a controlled substance.

¶ 17    On June 21, 2016, while awaiting sentencing in case No. 14-CF-343, defendant entered into a plea agreement in the remaining cases. The terms of the plea agreement were as follows.

¶ 18    In case No. 13-CF-544, defendant would plead guilty to count III, possession of cannabis with the intent to deliver it, a Class 1 felony (720 ILCS 550/5(f) (West 2012)). For that offense, he would be sentenced to a minimum of probation and a maximum of 15 years' imprisonment, to run consecutively to whatever sentence he received in case No. 14-CF-343 (with respect to which there was no deal). The remaining charges in case No. 13-CF-544 would be nol-prossed.

¶ 19    In case No. 15-CF-35, defendant would plead guilty to count IV, possession of cannabis with the intent to deliver it, a Class 1 felony (720 ILCS 550/5(f) (West 2014)). The sentence would be a minimum of probation and a maximum of 15 years' imprisonment, to run consecutively to the sentences in all of the other cases.

¶ 20    In case No. 14-CF-343, a bond of $50,000 had been posted, which was assigned to Winnie Taylor. After defendant was sentenced, the State would agree to releasing the $50,000 to Winnie Taylor.

¶ 21    All other funds being held, including the $174,850 in case No. 15-MR-35 (the $184,850 that Burris had brought minus the $10,000 returned to defendant's son) and the $72,014 seized from the house, would be forfeited to the government. So, this would be a forfeiture of a total of $246,864 in United States currency ($174,850 plus $72,014).

¶ 22    Finally, case Nos. 11-CF-465 and 12-CF-509 would be nol-prossed.

¶ 23    Those were the terms of the plea agreement. On June 21, 2016, defendant pleaded guilty on those terms, and Judge O'Shaughnessy accepted his guilty pleas.

¶ 24    On June 23, 2016, after denying a second amended motion for a new trial or, in the alternative, a judgment of acquittal in case No. 14-CF-343, the circuit court called that case and case Nos. 13-CF-544 and 15-CF-35 for sentencing. Judge O'Shaughnessy sentenced defendant to 10 years' imprisonment in case No. 14-CF-343, 8 years' imprisonment in case No. 15-CF-35, and 6 years' imprisonment in case No. 13-CF-544, ordering that these prison terms run consecutively.

¶ 25    On July 18, 2016, defendant filed, *pro se*, a sworn motion to withdraw his guilty pleas in case Nos. 15-CF-35 and 13-CF-544. Defendant gave two reasons why, in his view, he should be allowed to withdraw his guilty pleas. First, at the time of defendant's arrest, medical marijuana was legal in Illinois, and "[t]he State withheld from the defendant [a] signed affidavit from the rightful owner of said medical marijuana." Attached to defendant's *pro se* motion was an affidavit by the purported rightful owner, Ricky Mullins. In his affidavit, Mullins averred that on January 22, 2015, without defendant's knowledge, he hid a box of marijuana in the attic of defendant's house, thinking that the attic would be a safe hiding place since that was where defendant kept his money. Second, Judge O'Shaughnessy, defendant claimed, was "a close personal friend of Wesley Burris," and not only that, but Judge O'Shaughnessy or "his law firm" was representing Burris and his company. Burris, defendant continued, was a witness against defendant in case No. 15-CF-35, putting Judge O'Shaughnessy in "a conflict of interest."

¶ 26    Postplea counsel appeared on behalf of defendant and on November 6, 2017, filed an amended motion to withdraw the guilty pleas. The amended motion asserted that the State had "negotiated the plea agreement in bad faith" and that defendant had "received ineffective assistance of counsel in entering into his plea agreement." The reason for those assertions was this: a statutory deadline allegedly had been missed in the forfeiture cases (see 725 ILCS 150/9(F) (West 2014)), making the government's retention of the currency illegitimate. A statutory deadline for

holding a trial in the forfeiture cases supposedly had gone by. The clock was supposed to begin ticking with the filing of an answer. The amended motion represented that, in the forfeiture case pertaining to the $72,014, defendant filed his answer to the State's verified complaint on March 23, 2015. Section 9(F) of the of the Drug Asset Forfeiture Procedure Act (725 ILCS 150/9(F) (West 2014)) provided that a trial had to be held "within 60 days after filing of the answer [to the complaint of forfeiture] unless continued for good cause." No trial had been held.

¶ 27        Allegedly, it was the same story in Vermilion County case No. 15-MR-35, the civil forfeiture case pertaining to the $184,850. In that case, the State filed its verified complaint on February 18, 2015, and on March 23, 2015, according to the amended motion, defendant filed his answer. No trial was ever held on that complaint either. Thus, the amended motion claimed, the 60-day deadline in section 9(F) was missed in that case too. In *People v. Four Thousand Eight Hundred Fifty Dollars*, 2011 IL App (4th) 100528, as defendant interpreted that decision, the Fourth District held that the deadlines in the Drug Asset Forfeiture Procedure Act (725 ILCS 150/1 *et seq.* (West 2014)) were mandatory, meaning that forfeiture was defeated if the deadlines were missed.

¶ 28        On December 7, 2017, the amended motion to withdraw the guilty pleas was scheduled to be heard. At the request of postplea counsel, the hearing was continued for 60 days because, after speaking with defendant, there were some other issues that she believed postplea counsel needed to address. The State had no objection to the proposed continuance, and Judge O'Shaughnessy granted the continuance.

¶ 29        Before concluding the hearing, however, Judge O'Shaughnessy took the occasion to remark that Burris was indeed an acquaintance of his and a former client when Judge O'Shaughnessy was with a Danville law firm, Acton and Snyder LLP. Judge O'Shaughnessy

explained that, if he had known, at the time of the guilty-plea hearing, that Burris would be a witness in the State's case, he would have recused himself. Until reading defendant's *pro se* motion, however, he was unaware of Burris's involvement. Now, having been made aware, Judge O'Shaughnessy was uncertain if he should be the judge to rule on defendant's amended motion to withdraw his guilty pleas. He requested the attorneys to look into this question and to let him know what they found in their research. For that purpose, he gave postplea counsel time to file a second amended motion if she wished.

¶ 30    On April 25, 2018, at the rescheduled hearing on the amended motion to withdraw the guilty pleas, Judge O'Shaughnessy asked if defendant had elected not to file a second amended motion. Postplea counsel replied:

> "That's correct, Your Honor. I think when we were here before, the issue was about a potential conflict with Your Honor as a potential witness in the case [*sic*]. I think after reviewing everything and speaking with my client and going over it, I don't believe that that was a valid issue going forward. I did, however, file the [Rule] 604(d) certificate."

¶ 31    In the Rule 604(d) certificate that postplea counsel filed on April 25, 2018, she certified as follows:

> "1. I have consulted with the defendant in person and by phone to ascertain the [d]efendant's contentions of error in the entry of the plea of guilty;
>
> 2. I have examined the trial court file and report of proceedings of the plea of guilty; and
>
> 3. I have made any amendments to the motion necessary for the adequate presentation of any defects in those proceedings."

¶ 32    Having presented this Rule 604(d) certificate, postplea counsel made the following contention of error in the hearing on the amended motion to withdraw the guilty pleas:

> "[The State] should have held a forfeiture hearing within the time required by statute. They didn't; and based on the case law and the statute, at that point that money should have automatically gone back to my client. But as a way to, I guess, fix the oopsy, the State decided to make that a part of the plea.
>
> It's my position that that should not have even been able to be part of the plea because when that 30-day period had passed, the money should have already gone back to my client. *** And it's my position that because of that[,] this is not an enforceable agreement; and based on that, he should be allowed to withdraw his plea and we essentially should start back from the beginning in 2015.
>
> I think that when, you know—the statute is very clear on these proceedings[,] and I think that it was not made clear to my client that this is how it should have happened."

¶ 33    The circuit court asked postplea counsel, "[W]hy is it that him agreeing to assign those monies to the State, pay those monies to the State as a part of a plea agreement that reduced Class X charges to probationable offenses not also a waiver on his behalf of any interest in those monies?"

¶ 34    That was a valid point, postplea counsel answered, but the problem remained that defendant, when entering into the plea agreement, was inadequately informed of the true state of affairs—the State's true position of desperation—in the forfeiture cases:

> "I think in reviewing the transcripts from the plea hearings and in conversations with my client, my client was not led to believe that he was giving up those monies

to the State. He was led to believe that those monies already belonged to the State and it was something that he was never going to see anyway. Similar to when a felon is charged with possession of a firearm and part of the plea is forfeit the— well, they know they're not getting that gun back. I think that [defendant] was led to believe that, for whatever reason, he had missed a deadline of something and that that money was—it was gone no matter what; and that is not the case."

¶ 35     The circuit court asked postplea counsel what was the date by which, according to her theory, a trial in the forfeiture cases had to be held. She answered as follows:

"MS. BEZNER: Your Honor, I think it would have been within the 30 days of that February—I'm sorry, 60 days of that February 17th, 2015, date when the agreed order was filed.

THE COURT: Well, your motion says 60 days after the filing of an answer.

MS. BEZNER: Your Honor, that's what the statute lays out in [section 9 (725 ILCS 150/9 (West 2014))], but I think that the date of the agreed order would constitute an answer on their part because the whole point of filing—

THE COURT: That was before the complaint was filed.

MS. BEZNER: Exactly. And, Your Honor, I think that the whole point of filing an answer is to give the State notice that I'm seeking a claim to these funds, and it's clear from that order that they knew that he was claiming those funds to be his.

THE COURT: Well, [defendant] filed an answer in [case No.] 15[-]MR[-]35.

MS. BEZNER: Correct.

- 10 -

THE COURT: He didn't file an answer in [case No.] 15[-]MR[-]31. Well, that might not be true. He may have filed a *pro se*—

MS. BEZNER: I have one in [case No. 15-MR-31] marked March 30th of 2015. It's titled motion—I'm sorry. Motion to deny—

THE COURT: There's a document entitled Motion to Deny Forfeiture.

MS. BEZNER: Correct."

¶ 36　　　　The circuit court asked the prosecutor what his position was. In response, the prosecutor observed that, by the court's order of February 17, 2015, the forfeiture proceedings were consolidated with the criminal proceedings and that plea counsel, Frank R. Young, was defendant's attorney of record in both the forfeiture proceedings and the criminal proceedings (before Bezner became postplea counsel). The prosecutor continued:

"There's no answer that was ever filed by Mr. Young in these cases, and Miss Bezner's asking that the court follow very strictly the statute; and the statute indicates in subsection (F) [(*id.* § 9(F))] that the hearing must be held within 60 days after filing of the answer. It's our position that no answer was ever filed. The order that was entered on February 17th is merely that probable cause was found to hold the funds pending the formal filing of forfeiture, which we did. We filed a complaint for forfeiture in both matters."

¶ 37　　　　In any event, the prosecutor pointed out, section 10 of the Drug Asset Forfeiture Procedure Act (*id.* § 10) provided "a stay of time periods when the property [was] seized for evidence," and "the time periods for instituting judicial and non-judicial proceedings [were] not [to] begin until the property [was] no longer necessary for evidence."

- 11 -

¶ 38 After hearing the arguments, Judge O'Shaughnessy denied the amended motion to withdraw the guilty pleas. He found that "the agreements of February 17, 2015, that were tendered to and approved by the court constitute[d] waivers on behalf of the defendant of any time tables or constraints required by the forfeiture statutes."

¶ 39 Defendant then appealed from the judgments in case Nos. 13-CF-544 and 15-CF-35.

¶ 40 On November 15, 2018, the appellate court issued agreed-upon orders for summary remands in case No. 4-18-0319 (Vermilion County case No. 15-CF-35) and case No. 4-18-0320 (Vermilion County case No. 13-CF-544). The remand orders, which were functionally identical in both cases, provided as follows:

> "This cause is remanded to the circuit court for the filing of a correct, complete Rule 604(d) certificate indicating that counsel has examined both the guilty plea and sentencing transcripts and ascertained the defendant's contentions of error in both the entry of his guilty plea and in sentencing; the opportunity to file a new post-plea motion[,] if defendant so wishes; a new hearing on the motion; a new judgment; a new notice of appeal; and strict compliance with the requirements of Rule 604(d)."

¶ 41 On October 16, 2019, on remand, postplea counsel filed the second amended motion in case Nos. 13-CF-544 and 15-CF-35. The second amended motion was identical to the amended motion except that the second amended motion raised, in addition, Judge O'Shaughnessy's alleged conflict of interest, and it challenged some fines and fees.

¶ 42 Along with the second amended motion, postplea counsel filed a new Rule 604(d) certificate in the two cases. The new certificate represented as follows:

"1. I have consulted with the defendant in person, by mail, by phone, or by electronic means to ascertain the [d]efendant's contentions of error in the entry of the plea of guilty and in the sentence;

2. I have examined the trial court file and report of proceedings of the plea of guilty and the report of proceedings in the sentencing hearing; and

3. I have made any amendments to the motion necessary for the adequate presentation of any defects in those proceedings."

¶ 43        On October 21, 2019, in the two cases, defendant filed a *pro se* letter, in which he requested the circuit court "to allow the following issues and [arguments to] be added to the record of the [October 21, 2019,] motion to withdraw the guilty plea hearing." One such issue was a "[c]onflict of interest because of Judge O'Shaughnessy['s] personal and business relationship with a key witness in case [No.] [15]-CF-35[,] Wesley Burris." The second issue that defendant wanted to raise was that "Mr. Young was ineffective for failing to ever file an answer to the original verified complaint." Because of that failure, defendant himself "filed a *pro se* answer to the verified complaint," "ask[ing] that the forfeited money be returned." Thereafter, the State "failed to have the mand[a]tory hearing within 60 days of the defendant filing the answer to the verified complaint." Consequently, defendant claimed, the State's retention of the money "was illegal." "How could the defendant *** make a knowing and voluntary decision to forfeit money that was never returned to him[?]" he asked rhetorically.

¶ 44        On October 21, 2019, Judge O'Shaughnessy held a hearing on the second amended motion. The attorneys had nothing to add. They chose to rely on the arguments that they previously made in the hearing on the amended motion.

¶ 45 Judge O'Shaughnessy denied the second amended motion. In doing so, he remarked that, at the time of the guilty plea, he was unaware that Burris would be a witness and that, besides, "Supreme Court Rule 63, subsection (d) [*sic*], [did] not require the [c]ourt to disqualify itself based upon a witness being a former client." Judge O'Shaughnessy added that it was unclear how his former relationship with Burris could have had any effect on his decision to accept defendant's guilty pleas.

¶ 46 On October 24, 2019, defendant filed notices of appeal in case Nos. 13-CF-544 and 15-CF-35. Specifically, he appealed from the October 21, 2019, denial of his second amended motion.

¶ 47                                    II. ANALYSIS

¶ 48         A. Postplea Counsel's Fulfillment of Her Duties Under Rule 604(d)

¶ 49             1. *Consulting With Defendant to Ascertain His Claims of Error*

¶ 50 Illinois Supreme Court Rule 604(d) (eff. July 1, 2017) required a certificate from postplea counsel. One of the assurances that postplea counsel had to give in her certificate was that she had "consulted with the defendant either by phone, mail, electronic means[,] or in person to ascertain defendant's contentions of error in the sentence and the entry of the plea of guilty." *Id.* Accordingly, on October 16, 2019, in her new certificate, postplea counsel certified that she had "consulted with the defendant in person, by mail, by phone, or by electronic means to ascertain [his] contentions of error in the plea of guilty and in the sentence."

¶ 51 That certification by postplea counsel is definitive unless we find, in our *de novo* review (see *People v. Neal*, 403 Ill. App. 3d 757, 760 (2010)), that the record refutes the certification (see *People v. Winston*, 2020 IL App (2d) 180289, ¶ 14). In other words, we will take postplea counsel at her word unless the record affirmatively shows that she did not consult with

- 14 -

defendant to ascertain his claims of error in the entry of his guilty pleas and in the sentences. As we put it in *Neal*:

> "The certificate itself is all this court will consider to determine compliance with Rule 604(d). [Citation.] ***
>
> This said, we may consider the record where it undermines the certificate filed." *Neal*, 403 Ill. App. 3d at 760; see also *People v. Herrera*, 2012 IL App (2d) 110009, ¶ 13.

¶ 52        Defendant maintains that the record, specifically his *pro se* letter of October 21, 2019, undermines the certification by postplea counsel that she consulted with him to ascertain his contentions of error. Defendant argues that, in his *pro se* letter, he made the following additional contentions that postplea counsel had failed to "ascertain" by "consult[ing]" with him (Ill. S. Ct. R. 604(d) (eff. July 1, 2017)):

> "[He] asserted [in his *pro se* letter] that, '[a]long with [a]ll the points that [postplea counsel] brought up in her original motion[,] [he] would like to add [that plea counsel] was ineffective for failing to ever file an [a]nswer to the Original Verified Complaint [in the forfeiture proceedings.]' [Citation.] [Defendant] indicated that additionally he could not knowingly and voluntarily plead guilty when he did not understand his right to the return of the seized money. [Citation.]"

(The brackets enclosing the phrase "in the forfeiture proceedings" are defendant's.) According to defendant, "there is no indication that post-plea counsel consulted with [him] about the[se] claims raised in his letter." Therefore, defendant concludes, "the record undermined post-plea counsel's assertions on October 16, 2019, that she consulted and discussed with [defendant] all of his claims concerning the entry of his guilty plea and his sentencing."

¶ 53　　　　But this reasoning by defendant gets it backwards. If the record is silent except for the certificate, that is a reason to trust the certificate rather than to distrust it. The default assumption is that the certificate is true. This default assumption is overcome only by an affirmative showing, from the record, that the certificate is untrue. See *Winston*, 2020 IL App (2d) 180289, ¶ 14; *Herrera*, 2012 IL App (2d) 110009, ¶ 13; *Neal*, 403 Ill. App. 3d at 760.

¶ 54　　　　The records in these cases do not enable us to deny that postplea counsel consulted with defendant regarding his claims, including the claims that he subsequently wrote down in his *pro se* letter to the circuit court. Postplea counsel could have talked with defendant about these claims before defendant wrote about them to the court. Possibly, the reason why defendant felt moved to write his letter was that postplea counsel had heard the claims from his mouth and had told him that, in her opinion, the claims lacked any potential merit—an opinion with which he disagreed. Postplea counsel certified that she had consulted with defendant to ascertain his claims. If, as defendant admits, the records are silent on this question except for the certificate, then the certificate prevails.

¶ 55　　　　　　　　　2. *Making Any Necessary Amendments*

¶ 56　　　　Rule 604(d) requires postplea counsel to certify that he or she has "made any amendments to the motion necessary for adequate presentation of any defects in those proceedings." Ill. S. Ct. R. 604(d) (eff. July 1, 2017). Accordingly, in case Nos. 13-CF-544 and 15-CF-35, postplea counsel certified, "I have made any amendments to the motion necessary for adequate presentation of any defects in those proceedings," that is, the guilty-plea proceeding and the sentencing proceeding.

¶ 57　　　　In defendant's view, the records refute that certification. The second amended motion, obviously, is part of the common-law records in the two cases. We can see what the second

amended motion lacks. Defendant argues that, by failing to include in the second amended motion "his claim that defense counsel was ineffective for failing to file an answer in the forfeiture proceedings and securing the return of the seized money," postplea counsel caused a "waiver" of that claim.

¶ 58        To characterize defense counsel—more specifically, in this context, plea counsel—as "ineffective" is to invoke "an accused's sixth amendment right to the effective assistance of counsel" (U.S. Const., amend. VI). See *People v. Hampton*, 149 Ill. 2d 71, 107-08 (1992). Defendant cites no case holding that the sixth amendment right to the effective assistance of counsel extends to civil forfeiture proceedings. See *United States v. $292,888.04 in U.S. Currency*, 54 F.3d 564, 568 (9th Cir. 1995) (holding that, even if the forfeiture could be considered punitive, "no [s]ixth [a]mendment right to counsel attached in this case because imprisonment [was] not authorized by any of the civil forfeiture statutes invoked by the [g]overnment in its complaint"). In enumerating plea counsel's shortcomings, postplea counsel was expected to serve as a criminal defense attorney, not a civil malpractice attorney. The duty of postplea counsel under Rule 604(d) was to "ma[k]e any amendments to the motion necessary for adequate presentation of any defects in *those proceedings*"—meaning the proceedings on the guilty pleas and the sentences, not the civil forfeiture proceedings. (Emphasis added.) Ill. S. Ct. R. 604(d) (eff. July 1, 2017).

¶ 59        To be sure, the circumstances here were unusual in that the civil forfeiture proceedings and the criminal proceedings were intertwined. The forfeiture cases (case Nos. 15-MR-31 and 15-MR-35) were consolidated with the criminal cases (case Nos. 13-CF-544 and 15-CF-35). Not only that, but the forfeiture to the State of the $246,864 in United States currency was a term of the plea agreement in the criminal cases. Although, in the forfeiture cases, defendant lacked a sixth amendment right to the effective assistance of counsel, he clearly had that right in

the plea negotiations in the criminal cases—negotiations that encompassed the disposition of the currency (see *People v. Hale*, 2013 IL 113140, ¶ 16).

¶ 60 More precisely, defendant had "the constitutional right to be *reasonably* informed with respect to the direct consequences of accepting or rejecting a plea offer." (Emphasis in original and internal quotation marks omitted.) *Id.* A direct consequence of pleading guilty would have been an effectuation of the terms of the plea agreement, including the term that defendant would forfeit the $246,864. Thus, when it came to the $246,864, all plea counsel had to do was advise defendant that, by pleading guilty, he would forfeit the $246,864, as the plea agreement provided. That would be the direct consequence. The sixth amendment and, therefore, Rule 604(d) were indifferent to whether plea counsel advised defendant on available defenses to the civil forfeiture actions. Such advice on the merits of collateral proceedings would have been outside the purview of "effective assistance," a sixth amendment concept. See *People v. Thomas*, 2017 IL App (4th) 150815, ¶ 16; *Harris v. Allen*, 929 F.2d 560, 562 (10th Cir. 1991).

¶ 61 But let us assume, for the sake of argument, that we are wrong about collaterality in this instance. Let us assume that, in the particular circumstances of case Nos. 15-CF-25 and 13-CF-544, the civil forfeiture proceedings were not collateral, considering that (1) the forfeiture of the $246,864 was an explicit term of the plea agreement, (2) the forfeiture cases and the criminal cases were consolidated, and (3) defense counsel in the forfeiture cases was plea counsel in the criminal cases. Let us assume that, with these eggs scrambled together, there no longer was any meaningful distinction between the criminal cases and the forfeiture cases. Even on that assumption, the ineffectiveness claim was unsalvageable by any conceivable amendment.

¶ 62 One problem with the envisioned claim of ineffective assistance is that it is internally inconsistent.

¶ 63    On the one hand, defendant criticizes postplea counsel for failing to incorporate into the second amended motion his *pro se* claim that plea counsel was ineffective by neglecting to file answers in the civil forfeiture cases.

¶ 64    On the other hand, defendant criticizes postplea counsel for failing to raise an ineffectiveness theory that would presuppose the filing of answers in the forfeiture cases. Defendant's entitlement to the seized funds would presuppose the filing of an answer—which, paradoxically, he complains that Young never filed. Defendant argues, "The amended motion did not even aver that [defendant] did not know that he was potentially entitled to the seized funds, a factual point that [defendant] tried to unsuccessfully raise in his later *pro se* letter to the circuit court that was disregarded."

¶ 65    Fully unpacked, such a claim of ineffective assistance would look something like this. Section 9(F) of the Drug Asset Forfeiture Procedure Act (725 ILCS 150/9(F) (West 2014)) provided that "[t]he hearing [on the complaint for forfeiture had to] be held within 60 days after filing of the answer unless continued for good cause." Answers, according to this theory, were filed (or were they?), but no trial was held within 60 days. Because the State supposedly had blown the 60-day deadline in section 9(F), the forfeiture proceedings, at the time of the plea agreement, were already vitiated. *Cf. Four Thousand Eight Hundred Fifty Dollars*, 2011 IL App (4th) 100528, ¶ 35 (holding that "the cumulative 97-day deadline in sections 5 and 6(A) of the [Drug Asset Forfeiture Procedure] Act [(725 ILCS 150/5, 6(A) (West 2006))] is a mandatory procedure, the disregard of which vitiates the contemplated forfeiture").

¶ 66    For defendant, that would have been important to know. Here is why. If the underlying facts had been against him in the forfeiture cases—if it was clear that the outcome of those cases, after a trial, would have been the forfeiture of the currency to the State anyway—the

forfeiture of the currency might not have seemed much of a concession in the plea negotiations. If, however, unbeknownst to defendant—because plea counsel had failed to so advise him—defendant had a surefire procedural defense in the forfeiture cases, namely, the State's having missed the 60-day deadline in section 9(F), the forfeiture of the currency, in the plea negotiations, would have been a real concession. It would have been a substantial concession as opposed to a shrugging of the shoulders or the concession of a foregone conclusion. Advised of his knockdown procedural defense, defendant would have understood that he was giving up something solid, something big, in the plea negotiations as opposed to giving up something that, effectively, he already had lost, or so the writing on the wall might have otherwise suggested to him. *Cf. People v. Mendez*, 336 Ill. App. 3d 935, 939 (2003) (holding that a plea counsel can be ineffective by failing to advise the defendant of an available defense, thereby making the guilty plea inadequately informed).

¶ 67 The trouble is, this section 9(F) defense evaporates on closer inspection. Its fatal weakness is this: apparently, a valid answer was never filed in either of the forfeiture cases. Granted, the second amended motion alleges that on March 23, 2015, "Henry Taylor filed his answer" in both of the forfeiture cases. By "Henry Taylor," though, the second amended motion must mean defendant *pro se*—who was represented by the plea counsel, Young, in both of the forfeiture cases. In the hearing on the amended motion to withdraw the guilty pleas, the prosecutor insisted that, because Young was the attorney of record for defendant in both of the forfeiture cases, no answer (effectively) was ever filed in those cases. Apparently, that was why, in the hearing on the amended motion, postplea counsel made the highly creative argument that the "Agreed Order" of February 17, 2015 (stipulating that the State had shown reasonable cause for a source-of-bond hearing) was a preemptive answer to forfeiture complaints that had not yet been

filed. Evidently, postplea counsel realized that *pro se* filings by represented parties did not count. See *In re Sean N.*, 391 Ill. App. 3d 1104, 1106 (2009).

¶ 68 "Hybrid representation," that is to say, self-representation simultaneous with representation by an attorney, requires special permission from the circuit court, which, as far as we know, was never given to defendant. See *Gerill Corp. v. Jack L. Hargrove Builders, Inc.*, 128 Ill. 2d 179, 200 (1989); *Sean N.*, 391 Ill. App. 3d at 1106. Because defendant was represented in the forfeiture cases, any *pro se* answers did not count as answers. See *Sean N.*, 391 Ill. App. 3d at 1106; *People v. James*, 362 Ill. App. 3d 1202, 1205 (2006) (holding that, "when a defendant is represented by counsel, the defendant generally has no authority to file *pro se* motions, and the court should not consider them"). Defendant himself confirms our impression that only *pro se* answers were filed to the complaints for forfeiture. In his letter to the circuit court, defendant maintained " '[that defense counsel] was ineffective for failing to ever file an [a]nswer to the Original Verified Complaint [in the forfeiture proceedings.]' " (We quote from defendant's brief, in which he quotes from his *pro se* letter.) The answers, then, must have been filed by defendant *pro se*. The record does not appear to show otherwise. In our review of the common-law records provided to us, we have come across no civil forfeiture answers signed by Young.

¶ 69 Because a fundamental premise of this ineffectiveness claim—namely, the filing of valid answers in the forfeiture cases—appears to be false, we conclude that further amendments to the ineffectiveness claim would have been futile and, hence, unnecessary. (Again, this is assuming, for the sake of argument, that there could be such an ineffectiveness claim despite the general rule that civil forfeiture proceedings are collateral.)

¶ 70 The failure to file answers in the forfeiture cases could not have been ineffective assistance either. There were no judgments against defendant by default. He suffered no apparent

prejudice from the omission of answers to the State's forfeiture complaints. See *People v. Shipp*, 2020 IL App (2d) 190027, ¶ 31 (explaining that the failure to establish either deficient performance by defense counsel or resulting prejudice is fatal to an ineffectiveness claim).

¶ 71 In sum, then, we find in the records no affirmative refutation of postplea counsel's certification that she "made any amendments to the motion necessary for adequate presentation of any defects in [the guilty-plea and sentencing] proceedings." For the reasons we have discussed, the conclusory ineffectiveness claim in the second amended motion was devoid of potential merit. It was unrepairable by any possible amendment. Legally unmeritorious amendments are not "necessary" amendments. Ill. S. Ct. R. 604(d) (eff. July 1, 2017). Therefore, again, the Rule 604(d) certificate will prevail.

¶ 72 3. *Supplying by Affidavit the Facts That Do Not Appear of Record*

¶ 73 According to postplea counsel's argument in the hearing on the amended motion to withdraw the guilty pleas, defendant "was led to believe" that he already had forfeited the seized currency. Defendant argues that, if indeed plea counsel had misadvised him about his chances for defeating the actions for a civil forfeiture of the currency, postplea counsel should have provided an affidavit to that effect instead of making an unsupported assertion to the circuit court. "When the motion is based on facts that do not appear of record[,] it shall be supported by affidavit ***." Ill. S. Ct. R. 604(d) (eff. July 1, 2017). Defendant maintains that "[p]ost-plea counsel's failure to file the requisite affidavits or [to] call [defendant] to testify in support of his allegations violated Rule 604(d)." See *People v. Bridges*, 2017 IL App (2d) 150718, ¶ 9 (explaining that, "under Rule 604(d), facts that do not appear of record must be supported by an affidavit" and, therefore, "to fulfill her duty to amend [the] defendant's motion, counsel had to attach an affidavit substantiating the new allegations").

¶ 74 Plea counsel could have fallen down in his duty to advise defendant of a section 9(F) defense in the forfeiture proceedings only if, objectively speaking, there was such a defense— and, as we have explained, the record tends to suggest that there was no such defense. Therefore, amending the postplea motion so as to allege and substantiate the omission by plea counsel to advise defendant of a (nonexistent) section 9(F) defense was not "necessary." Ill. S. Ct. R. 604(d) (eff. July 1, 2017).

¶ 75 B. The Alleged Conflict of Interest of Judge O'Shaughnessy

¶ 76 Defendant argues that, because Judge O'Shaughnessy did not recuse himself or assign another judge to adjudicate the claim that he was under a conflict of interest, defendant was denied a fair hearing on his second amended motion. But defendant never moved that Judge O'Shaughnessy recuse himself or that he assign another judge to adjudicate the claim that he was under a conflict of interest.

¶ 77 Under section 114-5(d) of the Code of Criminal Procedure of 1963 (725 ILCS 5/114-5(d) (West 2016)), a party may, "at any time," move for a substitution of the judge "for cause." Alternatively, a party may move for a recusal under Illinois Supreme Court Rule 63(C)(1) (eff. Jan. 1, 2016). Defendant was continuously represented in case Nos. 15-CF-035 and 13-CF-544, and in neither of those cases did plea counsel or postplea counsel file a section 114-5(b) motion for a substitution of judge or a Rule 63(C)(1) motion for recusal.

¶ 78 True, as defendant says, he filed a "*pro se* motion[,] *** supported by a notarized affidavit," "averr[ing] that Judge O'Shaughnessy's personal friendship and prior professional relationship with a potential witness against him, Burris, cause a conflict of interest in his case." "[W]hen a defendant is represented by counsel," however, "the defendant generally has no authority to file *pro se* motions, and the court should not consider them." *James*, 362 Ill. App. 3d

at 1205. (The only exception of which we are aware is if the *pro se* motion alleges ineffective assistance. See *id.* at 1206.)

¶ 79　　　　The only motion by *defense counsel* alleging a conflict of interest on the part of Judge O'Shaughnessy was the second amended motion—and the second amended motion requested neither a substitution of judge nor a recusal. Instead, the second amended motion merely contended that, because of Judge O'Shaughnessy's relationship with Burris, defendant should be allowed to withdraw his guilty pleas. Here is all that the second amended motion had to say regarding the purported "Conflict of Judge O'Shaughnessy":

> "43. Judge O'Shaughnessy had a lengthy professional relationship with Wes Burris, who was listed as a potential witness against [defendant].
>
> 44. [Defendant's] decision to plead guilty could have been based on the judge's relationship with a witness against him.
>
> 45. If a decision to enter a plea of guilty is based upon a judge's relationship with a witness, the defendant[ ] should be allowed to withdraw his guilty pleas.
>
> 46. It was improper for Judge O'Shaughnessy to adjudicate Defendant's Motion to Withdraw his Guilty Plea because of the relationship with Burris."

We do not see in those paragraphs a request for recusal or substitution.

¶ 80　　　　Granted, merely pointing out the omission of a motion for recusal or substitution does not answer the question of whether Judge O'Shaughnessy was under a conflict of interest that made the guilty-plea proceedings unfair, as the second amended motion claims. This claim, though, is little more than a bald assertion. Defendant does not cite any authority holding that a judge's prior representation of a witness, in apparently another matter, is disqualifying.

¶ 81          Illinois Supreme Rule 63(C)(1)(e)(vi) (eff. Feb. 2, 2017) provides that, for a judge to be disqualified, the material witness must be the judge, someone related to the judge, or the spouse of someone related to the judge. More specifically, the rule provides as follows:

> "(1) A judge shall disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to instances where:
>
> * * *
>
> (e) the judge or the judge's spouse, or a person within the third degree of relationship to either of them, or the spouse of such a person:
>
> * * *
>
> (iv) is to the judge's knowledge likely to be a material witness in the proceeding."

It was never suggested that Burris was related to Judge O'Shaughnessy by blood or marriage.

¶ 82          Admittedly, Rule 63(C)(1)(e)(vi) is, by its terms, open-ended. It uses the phrase "including but not limited to instances." Ill. S. Ct. R. 63(C)(1) (eff. Feb. 2, 2017). The instances are non-exhaustive. The essential test is whether "the judge's impartiality might reasonably be questioned." *Id.* The word "reasonably" signifies an objective standard. Judge O'Shaughnessy's initial ambivalence as to whether he ought to rule on the amended motion to withdraw the guilty pleas is not determinative on the question of whether, from an objective point of view, his impartiality might reasonably be questioned. We have found no Illinois case that is on point, but in other jurisdictions the general view appears to be that a witness's prior client relationship with the judge, by itself, is not grounds for mandatory recusal unless the prior client relationship was connected to the present litigation. *Cain v. Hershewe*, 760 S.W.2d 146, 148 (Mo. Ct. App. 1988);

*In re Disqualification of Rothgery*, 885 N.E.2d 245, ¶ 4 (Ohio 2005); *National Auto Brokers Corp. v. General Motors Corp.*, 572 F.2d 953, 958 (2d Cir. 1978). Defendant has not alleged that Judge O'Shaughnessy or Acton and Snyder represented Burris in connection with the present litigation. We see no convincing case for mandatory disqualification and, therefore, no abuse of discretion in the denial of the second amended motion. See *People v. Urr*, 321 Ill. App. 3d 544, 547 (2001) (holding that "[i]t is within the trial court's discretion whether to allow the withdrawal of a guilty plea, and its judgment will not be overturned absent an abuse of that discretion"). In other words, we are unable to say that the denial of the second amended motion was arbitrary, fanciful, or unreasonable or that it was a decision with which every reasonable mind would disagree. See *People v. Santos*, 211 Ill. 2d 395, 401 (2004).

¶ 83                                    III. CONCLUSION

¶ 84         For the foregoing reasons, we affirm the circuit court's judgment.

¶ 85         Affirmed.